UNITED STATES of America, Appellee,

v.

David Stanley MACK, Appellant.

No. 80–2042.

United States Court of Appeals,
Eighth Circuit.

Submitted July 2, 1981.

Decided July 8, 1981.

David Stanley Mack, pro se.

Thomas K. Berg, U. S. Atty., Thorwald H. Anderson, Jr., Asst. U. S. Atty., Dist. of Minn., Minneapolis, Minn., Ralph Ascher, Legal Intern, for appellee.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

This case involves David Stanley Mack's attacks, pursuant to 28 U.S.C. § 2255, on the validity of a twenty-year sentence and $5,000 committed fine he received after he pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). The district court denied section 2255 relief. We affirm.

I

After conducting plea negotiations, an Assistant United States Attorney, Mack and Mack's retained counsel appeared before United States District Judge Edward J. Devitt on April 26, 1977. The parties proposed a plea bargain to Judge Devitt containing the following conditions: (1) Mack would plead guilty to one of the two bank robberies for which he was charged; (2) the government would recommend a nine-year prison sentence; (3) Mack would return the proceeds of the two bank robberies to the FBI, but it was expressly recognized that Mack did not want to reveal the location of the robberies' proceeds until Mack was certain the judge would accept the plea bargain; (4) a presentence investigation would be conducted and a report made to the judge before his decision on whether to accept the plea; (5) if the judge accepted the plea, Mack would be interviewed prior to sentencing to ascertain the robbery proceeds' location (Mack would also be obligated to take any necessary steps to relinquish possession of the robbery proceeds); and (6) Mack would be obligated to take a polygraph test to insure recovery of all the robbery proceeds.

At the plea hearing, Judge Devitt stated that he would read the probation report before deciding whether to accept the plea agreement. The Assistant United States Attorney then asked Judge Devitt to notify the parties if a nine-year sentence was agreeable; if so, the government would "go about getting the money" and sentencing would follow. After an inquiry into the legal consequences of a guilty plea and the factual basis for the plea was conducted by the Assistant United States Attorney, Mack's counsel questioned Mack: "And you will not disclose to me where the [robbery] funds are until after you determine whether the Court will accept the negotiated plea, is that correct?" Mack answered: "Right." Mack also expressly recognized that Judge Devitt was free to accept or reject the proposal. Thereafter, the court questioned Mack as to the factual basis for his guilty plea and the terms of the proposed plea agreement. Judge Devitt issued a conditional acceptance of the guilty plea, subject to his reading the probation report and advising the lawyers of his decision. The matter was assigned to the probation office for presentence investigation.

On May 23, 1977, Judge Devitt rejected the proposed plea agreement, essentially because he had previously sentenced Mack for bank robbery and felt nine years was too short of a prison term for Mack. Mack immediately expressed dissatisfaction with the court's decision. After the court asked why Mack thought he was receiving a "bad deal," Mack responded, "Well, it's because I gave all the information that I was requested by the Court which was the money. Now that you got the money you turned around and say you are not accepting the plea." It was then revealed that Mack had been interviewed by a probation officer and that during the interview, Mack disclosed the whereabouts of the robbery proceeds. Defense counsel commented that Mack was

upset because he felt he fulfilled his part of the bargain. The Assistant United States Attorney responded that "the plea agreement was that the FBI was not going to interview" Mack until the court told the parties whether the plea bargain was acceptable; the government attorney noted that the FBI never interviewed Mack.[1] After the circumstances of the probation interview were discussed, Judge Devitt stated that "it would be a travesty on [sic] justice to give you [Mack] only nine years after your record." Mack's defense counsel expressed dissatisfaction with the underlying events:

> I think he felt that the request by the Probation Officer for this information was, in effect, a request from the Court. He felt obligated. He never consulted me. He felt obligated to disclose the whereabouts in keeping with his agreements and that is where the misunderstanding arose because technically he had agreed not to disclose these funds until after the Court indicated it was going to accept the plea and I think the record will bear that out.

> So I know the Court is not all at fault at all, but I do understand Mr. Mack's feelings. He felt he kept his end of the bargain, and now the Government is not keeping its end, and I have no answer to the dilemma, Your Honor.

Judge Devitt stated he would assign the matter to another judge and adhered to his decision to reject the plea.

The matter was referred to United States Senior District Judge Earl R. Larson and a hearing was held on July 6, 1977. At that time, Mack's defense counsel told Judge Larson that Mack's position was "substantially compromised by the events that led to the taking of the plea and his subsequent interviews." Counsel further stated that Mack attempted in good faith to fulfill the plea bargain conditions imposed by the government, but the agreement was rejected.

At a hearing held on July 7, 1977, Mack's defense counsel repeated the circumstances detailed above and argued that Mack, as a result of his admissions to the parole officer, "lost all the leverage he had in his plea agreement" and "incriminated himself beyond rehabilitation." Counsel asserted that Mack so seriously impaired his position that the damaging taint could not be avoided in his subsequent criminal trial. Therefore, counsel requested that Judge Larson accept the original plea agreement. Judge Larson responded that Judge Devitt had an absolute right to reject the plea agreement and that he could preclude the government from using any of Mack's incriminating statements in the criminal trial.

In a July 8, 1977, hearing, defense counsel, among other things, again asked the court to accept the original plea bargain. On July 11, 1977, however, Mack pled guilty—for a second time—to one count of bank robbery. This second guilty plea resulted from renewed discussions between the United States Attorney's Office and Mack's defense counsel. At the second guilty plea proceeding, Judge Larson stressed, and Mack expressed his understanding, that the court alone would determine the penalty to be assessed. Judge Larson extensively questioned Mack as to the factual basis for the guilty plea and Mack expressly conceded that the former nine-year plea agreement was no longer in effect. Thus, Mack clearly recognized that the court could choose to sentence Mack to a maximum twenty-year prison term plus a $5,000 fine. Judge Larson accepted the guilty plea and referred the case to the probation office for presentence investigation.

On July 20, 1977, Judge Larson presided over Mack's sentencing hearing. Defense counsel asked the court to consider the government's earlier recommendation of a

---

1. It should be noted that the Assistant United States Attorney incorrectly stated that the plea bargain called for the FBI to interview Mack concerning the robbery proceeds' location. The April 26, 1977, hearing transcript, which details the plea agreement, states only that Mack was to *return* the robbery proceeds to the FBI. There is no mention in the transcript that FBI personnel would interview Mack in order to locate the robbery proceeds.

nine-year sentence and noted Mack's disappointment with the previous plea proceedings. After a lengthy colloquy with Mack, Judge Larson imposed a twenty-year prison term plus a $5,000 committed fine.

Mack filed a F.R.Crim.P. 35 motion which was denied in 1977, and he filed the instant 28 U.S.C. § 2255 action in May of 1980. After Judge Larson rejected the three grounds Mack raised in his section 2255 petition, Mack expressly abandoned one ground raised in his petition,[2] and now presents two issues for consideration: (1) is Mack's $5,000 committed fine unconstitutional because of his indigency; and (2) is Mack entitled to specific enforcement of the originally negotiated plea agreement?

## II

Mack first argues that because he is indigent, his $5,000 committed fine is unconstitutional under the equal protection clause. He maintains that any incarceration beyond his normal release date solely because of a failure to pay his $5,000 fine is unconstitutional and that 18 U.S.C. § 3569 is unconstitutional on its face.[3]

The government responds that the issue of whether Mack's $5,000 committed fine is constitutional is not presently justiciable. The government maintains that Mack's attack on his committed fine is unripe and merely hypothetical because Mack is not presently incarcerated solely because of his fine and because, under present administrative policies, Mack will never be detained solely for nonpayment of the $5,000 fine.

The district court declined to reach this constitutional issue because the Bureau of Prisons has a formal Policy Statement that recognizes the unconstitutionality of 18

2. Mack argued in the district court that his guilty plea was invalid because it was not entered knowingly and voluntarily; he expressly waived this issue on appeal.

3. 18 U.S.C. § 3569, entitled "Discharge of indigent prisoner," provides:

(a) *When a poor convict*, sentenced for violation of any law of the United States by any court established by enactment of Congress to be imprisoned and pay a fine, or fine and costs, or to pay a fine, or fine and costs, *has been confined in prison thirty days, solely for the nonpayment of such fine*, or fine and costs, *such convict may make application in writing to the nearest United States magistrate* in the district where he is imprisoned setting forth his inability to pay such fine, or fine and costs, and after notice to the district attorney of the United States, who may appear, offer evidence, and be heard, the magistrate shall proceed to hear and determine the matter.

*If on examination it shall appear to him that such convict is unable to pay such fine, or fine and costs, and that he has not any property exceeding $20 in value, except such as is by law exempt from being taken on execution for debt, the magistrate shall administer to him the following oath*: "I do solemnly swear that I have not any property, real, or personal, exceeding $20, except such as is by law exempt from being taken on civil process for debt; and that I have no property in any way conveyed or concealed, or in any way disposed of, for my future use or benefit. So help me God." *Upon taking such oath such convict shall be discharged*; and the magistrate shall file with the institution in

which the convict is confined, a certificate setting forth the facts. In case the convict is found by the magistrate to possess property valued at an amount in excess of said exemption, nevertheless, if the Attorney General finds that the retention by such convict of all of such property is reasonably necessary for his support or that of his family, such convict shall be released without further imprisonment solely for the nonpayment of such fine, or fine and costs; or if he finds that the retention by such convict of any part of such property is reasonably necessary for his support or that of his family, such convict shall be released without further imprisonment solely for nonpayment of such fine or fine and costs upon payment on account of his fine and costs, of that portion of his property in excess of the amount found to be reasonably necessary for his support or that of his family.

(b) Any such indigent prisoner in a Federal institution may, in the first instance, make his application to the warden of such institution, who shall have all the powers of a United States magistrate in such matters, and upon proper showing in support of the application shall administer the oath required by subsection (a) of this section, discharge the prisoner, and file his certificate to that effect in the records of the institution.

Any such indigent prisoner, to whom the warden shall fail or refuse to administer the oath may apply to the nearest magistrate for the relief authorized by this section and the magistrate shall proceed de novo to hear and determine the matter. [Emphasis added.]

U.S.C. § 3569. The court noted that a joint policy statement of the Bureau and the Board of Parole provides a mechanism to ensure that no prisoner will remain incarcerated for a longer period solely because of his inability to pay a committed fine. It concluded that the government should be entitled to a presumption that these administrative regulations would be applied in good faith.

Clearly, an indigent prisoner cannot be subjected to imprisonment for failure to pay a fine for a longer period of time than someone who has ability to pay the fine. *United States v. Miller*, 588 F.2d 1256, 1264 (9th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979) (citing *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); and *United States v. Estrada de Castillo*, 549 F.2d 583 (9th Cir. 1976)).

Therefore, to the extent that 18 U.S.C. § 3659 *could be* applied to extend incarceration for thirty days beyond the normal release date, it is unconstitutional. *See United States v. Estrada de Castillo, supra*, 549 F.2d at 584. However, present administrative policies will preclude an unconstitutional extension of any prison term. We assume these policies will continue to be applied in the future and decline to reach the constitutional issue Mack now presents. *See United States v. Glazer*, 532 F.2d 224, 230–231 (2d Cir.), *cert. denied*, 429 U.S. 844, 97 S.Ct. 123, 50 L.Ed.2d 115 (1976).

### III

The Supreme Court has held that "when a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). It has also recognized that the "plea bargaining" process, during which an agreement between the accused and the prosecutor is consummated, must be conducted fairly. *Id.* at 261, 92 S.Ct. at 498.[4] "There is no doubt that the *essential terms* of a plea bargain, once reached, must be honored by the prosecution." *United States v. McClintic*, 570 F.2d 685, 692 (8th Cir. 1978) (citing *Santobello*) (emphasis added).. In addition to the Rule 11 requirements, this Court requires additional safeguards in the plea bargaining process:

> (1) Prosecutors must avoid mischarging, overcharging and threats of heavier sentences for those who do not plead guilty. (2) Judges are to require the agreement to be disclosed in open court at the time the plea is offered and require that the reasons for reaching the agreement be set forth in detail. (3) *Judges are not to participate in the bargaining; their role is to be limited to acceptance or rejection of agreements after a thorough review of all relevant factors.* They must independently satisfy themselves that acceptance of the agreement adequately protects the rights of the defendant and the interests of justice, and they must set forth their reasons for accepting or rejecting the plea. (4) *Defendants must be given an opportunity to withdraw the plea if the bargain is rejected by the judge. In such event, evidence of the plea is not admissible in any civil or criminal ·proceeding against the person who made the plea or the offer.*

*United States v. Gallington*, 488 F.2d 637, 640 (8th Cir. 1973), *cert. denied*, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974) (emphasis added) (footnotes omitted). *See also United States v. Williams*, 627 F.2d 154, 157 (8th Cir. 1980) (citing *Gallington*, this Court stated that the district court's role in plea bargaining is limited to accept-

---

**4.** *See also United States v. Herrera*, 640 F.2d 958, 960 n. 2 (9th Cir. 1981):

Fed.R.Crim.P. 11(e)(1)(C) provides that the Government may, as part of a plea bargain, "agree that a specific sentence is the appropriate disposition of the case." *When such*

*an agreement has been made the trial court may accept or reject the whole, but it may not accept the defendant's guilty plea and impose a sentence greater than that agreed upon.* Fed.R.Crim.P. 11(e)(2), (3). [Emphasis added.]

ance or rejection of the plea agreement). "The law is settled that breach of a plea bargain requires permitting the defendant to plead anew or demand specific performance." *United States v. Runck*, 601 F.2d 968, 970 (8th Cir. 1979), *cert. denied*, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980).

Here, the basic question is whether the mistake that allowed the probation officer to successfully question Mack as to the whereabouts of the robbery proceeds entitles Mack to specific performance of the original plea bargain. The district court recognized that the robbery proceeds interview was to be conducted *only after* acceptance of the plea agreement, but it declined to order specific performance. The court reasoned that Mack's belief that the plea agreement had been accepted, thus prompting disclosure of the robbery proceeds' whereabouts, was unreasonable. The court concluded: "Petitioner [Mack] could not have had a reasonable expectation [when the probation interview was conducted] * * that the agreement had been accepted and his revealing the location of the stolen proceeds to the probation officer could not bind the judge to an acceptance of the initial plea agreement."

 In our view, Mack had a reasonable expectation that the original plea agreement had been accepted, thus prompting disclosure of the robbery proceeds' whereabouts to the probation officer. The district court's finding to the contrary is simply not supported by the evidence. Because Mack's expectations were reasonable, his revelations to the probation officer would not have been admissible had Mack chosen to go to trial on the robbery charges.

We conclude, however, that the second guilty plea proceeding cured the difficulties that resulted from Mack's premature revelations. In our view, it is significant that Mack pled guilty a second time *after* his protestations concerning the original plea proceedings were fully aired and rejected by the district court. At the second guilty plea hearing, Mack clearly expressed his understanding that the original plea agreement recommending nine years was no longer in effect. Mack also expressed his

understanding that Judge Larson could sentence him to a maximum of twenty years and a $5,000 fine. As a result, the second guilty plea proceeding removed any prejudicial taint that arose from the previous plea proceedings. In addition, it is important that Mack does not allege, and the record does not indicate, that the prosecution acted in bad faith.

In summary, we conclude that Mack's constitutional attack on 18 U.S.C. § 3569 is not ripe and reject his request for specific performance of the original plea agreement. We accordingly affirm the district court's denial of 28 U.S.C. § 2255 relief.