In re Peter LARSON, Petitioner.

In re Neal LARSON; Robert Farrar; Black Hills Institute of Geological Research; Terry Wentz; Edwin Allen Cole; Jun Shimizu, Petitioners.

Nos. 94–3488, 94–3538.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1994.

Decided Dec. 29, 1994.

Patrick Duffy, Rapid City, SD (Mark Marshall, on the brief), for petitioner Peter Larson.

Bruce Ellison, Rapid City, SD (Ronald Banks, Randal Connelly, Terry Pechota and George Grassby, on the brief), for petitioner Neal Larson.

Robert Mandell, David Zuercher, Asst. U.S. Attys., Rapid City, Robert Hofer, Pierre, SD, for Judge Battey.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

MAGILL, Circuit Judge.

Peter and Neal Larson, four other individuals associated with the Black Hills Institute of Geological Research (the Institute), and the Institute (collectively referred to as Petitioners) petition this court for a writ of mandamus to the United States District Court for the District of South Dakota. Petitioners seek a writ instructing that court to: (1) vacate its order denying Petitioners' motions for recusal under 28 U.S.C. § 455(a) and (b)(1);[1] and (2) recuse itself from any further proceedings in the underlying criminal action. We deny the petition.

## I. BACKGROUND

This petition for a writ of mandamus arises from an ill-fated commercial fossil-gathering operation. The Institute was organized as a commercial fossil business. The Institute appeared to strike paydirt when it uncovered the bones of a 65–million–year–old Tyrannosaurus Rex. Unfortunately, the discovery of this dinosaur, affectionately referred to as "Sue," created the threat of landing the would-be fossil hunters in jail rather than on easy street. On May 14, 1992, the government seized the fossil bones, which the government alleged were illegally collected. The government obtained a thirty-nine-count indictment, alleging various crimes ranging from currency violations to conspiracy and theft of government property, and subjecting the defendants to potentially draconian sanctions. The criminal action was lodged in the District of South Dakota before the Honorable Richard H. Battey. Judge Battey also presided over a related civil case.

After more than two years and numerous proceedings before Judge Battey (the docket sheets consist of over 350 entries), the criminal case was on the verge of being concluded under a plea agreement. On September 20, 1994, the front page of the *Rapid City Journal* carried the headline "Fossil case won't go to trial." The accompanying article summarized the history of the case, noting that the government initially "made a standing offer to end the case if one of the institute owners or employees would plead guilty to a single felony count." The article explained that the government had since suffered several setbacks, and had "virtually giv[en] up the case" by negotiating an agreement under which the Institute, but no individual, would plead guilty to a single felony charge.

On September 21, 1994, a status hearing was held before Judge Battey. At the time of the hearing, the plea agreement was not yet finalized, and no plea of guilty had been entered. The source and effect of the *Rapid City Journal* article were extensively discussed at this hearing. During the course of the hearing, Judge Battey made the following remarks that provide the basis for this petition:

> A plea agreement, if reached between the parties, has to pass muster with the Court. From what I saw in the paper; if that's the plea agreement, it's not a plea agreement, it's a capitulation by the government. I am going to look very closely at whether or not in any plea agreement of your client [Peter Larson], principal officers of a closed corporation, can escape by putting the fault over on the corporation. I made a decision on that. But this case has been going on for two years, practically. It's a 39–count indictment and your clients de-

---

1. 28 U.S.C. § 455 provides in pertinent part:
   (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
   (b) He shall also disqualify himself in the following circumstances:

   (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

serve a trial. They have been professing their innocence all along, as is their right. But the system is also a part of these matters and so I will be looking at that plea agreement. What can the Court do in its limited power? Well, if I deny the plea agreement, you will try the case. How you try the case is up to you, but if the government is chagrin[ned] because the Court doesn't accept a plea agreement that the government is involved in and capitulates in the courtroom[—]which I don't believe the government would [do] because again, we, everybody took an oath, including the Court, to do the job which they have been assigned[—]we just go from there. I think that's all I will say about that plea agreement. I don't want to enter into a plea agreement. I am not going to, but I am going to exercise my judgment to examine the plea agreement. It looks to me from what I see in filings that there are relative degrees of fault, even among the conspiracy members. Some may be marginally involved; others may be highly involved. But I will wait. I don't want to affect that plea agreement by what I do about moving this trial, but we are within 40 days of trying a very complicated 39–count indictment. The last thing that lawyers should be doing right now is worrying about a plea agreement. That should have been done a long time ago. And right now you should be in the final phase of preparing this case for trial. All the negotiations for plea agreement do is distract you from the final preparation stage.

Tr. of Hearing, Sept. 21, 1994, at 26–27.

Later the same day, Judge Battey sent a letter to counsel of record, stating that he "consider[ed]" his remarks during the hearing to be "contrary to" Federal Rule of Criminal Procedure 11(e), which provides that the court "shall not participate in any such [plea agreement] discussions." Petitioners later filed motions for recusal which were denied.

## II. DISCUSSION

### A. Standard for Writ of Mandamus

This case comes to us as a petition for a writ of mandamus. Accordingly, we start by identifying the Petitioners' burden of proof. The law of this circuit is that:

[t]he writ of mandamus is an extraordinary remedy that should be utilized only in those 'exceptional circumstances ... amounting to a judicial usurpation of power.' *In re Lane*, 801 F.2d 1040, 1042 (8th Cir.1986) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam)). A federal court may issue a writ of mandamus only when the appellant has established a 'clear and indisputable right' to the relief sought, the court has a nondiscretionary duty to honor that right, and appellant has no other adequate remedy. *Lane*, 801 F.2d at 1042.

*Perkins v. General Motors Corp.*, 965 F.2d 597, 598–99 (8th Cir.), *cert.denied,* — U.S. ——, 113 S.Ct. 654, 121 L.Ed.2d 581 (1992). This petition presents a single dispositive issue: Whether Petitioners established a "clear and indisputable right" to recusal, the relief sought in the petition. We hold that they have not. Because of this decision, we do not address whether the court has a nondiscretionary duty to honor that right, or whether Petitioners have no other adequate remedy. We also do not address the issue whether there has been a judicial usurpation of power, although we doubt whether these facts support such a claim.

### B. Have Petitioners established a "clear and indisputable right" to recusal?

Petitioners argue that Judge Battey's remarks during the September 21 hearing: (1) reveal that Judge Battey has an actual bias against them; and (2) would lead a reasonable person to question Judge Battey's impartiality. It is important to note what is and is not at issue. Although Judge Battey learned of the plea agreement from an extrajudicial source (the newspaper article), and this knowledge precipitated his remarks, Petitioners do not claim that Judge Battey's alleged bias derived from the newspaper article. Moreover, Petitioners do not argue that Judge Battey's bias resulted from any extrajudicial source. Rather, Petitioners argue that the alleged bias derives from Judge Battey's prior involvement in the criminal proceedings against Petitioners and in the

now-completed civil suit involving the Institute. Petitioners therefore claim that they are entitled to recusal because Judge Battey has developed a bias from a "judicial source" of information. This argument requires us to examine the continued vitality of the extrajudicial source doctrine.

### 1. Is recusal required because of actual bias?

■ Although the extrajudicial source doctrine is not of recent vintage, it has proved "more standard in its formulation than clear in its application." *Liteky v. United States,* — U.S. —, —, 114 S.Ct. 1147, 1152, 127 L.Ed.2d 474 (1994). The standard formulation of the doctrine provides that "[t]he alleged bias and prejudice to be disqualifying ... must stem from an extrajudicial source." *Id.* at —, 114 S.Ct. at 1152 (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)). Although statement of the doctrine is relatively simple, application has proved more complicated because of the different definitions given to "extrajudicial source." *Liteky,* — U.S. at —, 114 S.Ct. at 1152. The lack of clarity of application was partially eliminated by the Supreme Court's recent decision in *Liteky,* which provides guidance for us in this case. *Liteky* instructs us that:

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.* at —, 114 S.Ct. at 1157.[2] To determine whether Petitioners have a right to recusal, we must therefore determine whether Judge Battey's remarks display a deep-seated antagonism to Petitioners that would make fair judgment impossible.

■ Petitioners are not entitled to recusal merely because Judge Battey may have an opinion about them. Assuming that Judge Battey's remarks indicate that he has an opinion, this opinion is not subject to characterization as bias or prejudice. A judge is permitted to form opinions about litigants; "[d]isinterestedness does not mean child-like innocence." *Id.* at —, 114 S.Ct. at 1155 (quoting *In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (2d Cir.1943)). Bias and prejudice are deprecatory characterizations. They do not refer to any and all opinions; rather, they connote opinions that are "somehow wrongful or inappropriate." *Liteky,* — U.S. at —, 114 S.Ct. at 1155 (emphasis omitted). An opinion may be wrongful either "because it is undeserved, or because it rests upon knowledge that the subject ought not to possess."[3] *Id.* at —, 114 S.Ct. at 1155. Petitioners do not allege that any opinion Judge Battey may have rests upon an improper basis. Thus, Judge Battey's purported opinion provides a basis for recusal only if it is excessive in degree. The opinion is not excessive in degree as long as fair judgment is possible. Despite Petitioners' selective quotation and creative emphasis of elements of the quoted portion of the September 21 hearing transcript, they have provided no evidence that Judge Battey is incapable of rendering fair judgment.

■ The quoted portion of the transcript, when viewed in its entirety, indicates only that Judge Battey is contemplating (prematurely, as we shall see below) his duty to examine the effect of the proposed plea agreement on the interests of the defendants and the public. *See United States v. Mack,* 655 F.2d 843, 847 (8th Cir.1981) (judges must independently assess "relevant factors" that include rights of defendants and interests of justice). Judge Battey recognizes this duty by noting that "[a] plea agreement ... has to pass muster with the Court." Again, Judge Battey states that "everybody took an oath,

**2.** This standard has been referred to as a "pervasive bias" exception to the extrajudicial source doctrine. *Liteky,* — U.S. at —, 114 S.Ct. at 1155.

**3.** *Liteky* notes that the extrajudicial source doctrine is merely an application of this general

principle to judges. *Liteky,* — U.S. at —, 114 S.Ct. at 1155. The extrajudicial source doctrine embodies the second concern (knowledge the subject should not possess), and the pervasive bias exception embodies the first (undeserved because excessive in degree).

including the Court, to do the job which they have been assigned," and he continues, "I am going to exercise my judgment to examine the plea agreement." Judge Battey then turns to the interests of the various defendants-Petitioners and states that he will "look very closely at whether or not in any plea agreement ... principal officers of a closed corporation, can escape by putting the fault over on the corporation," and observing that "[i]t looks to me from what I see in filings that there are relative degrees of fault...."[4] Judge Battey further considers the defendants' interests, noting that they "deserve a trial" and exhibiting concern that all parties adequately prepare for this trial. Finally, Judge Battey considers the interests of justice, noting that "the system is also a part of these matters." These remarks demonstrate only that Judge Battey is considering the impact of the plea agreement on the relevant interests. They do not indicate that Judge Battey is incapable of rendering fair judgment. Indeed, Judge Battey is performing precisely the type of analysis that he is required to perform in analyzing a plea agreement, albeit prematurely. Because Petitioners have not demonstrated that Judge Battey is incapable of rendering fair judgment, they have not demonstrated bias or prejudice. Accordingly, they have failed to establish a clear and indisputable right to recusal.

Moreover, although we do not believe that Judge Battey's remarks demonstrated any negative opinion of Petitioners, we note that Petitioners would not be entitled to recusal were Judge Battey's remarks or opinion to be characterized as critical or disapproving of, or even hostile to, Petitioners.

█ The judge who presides at a trial may, upon:

> completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not

thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Liteky*, —— U.S. at ——, 114 S.Ct. at 1155; *cf. Pfizer, Inc. v. Lord*, 456 F.2d 532 (8th Cir.), *cert. denied*, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972) (denying writ of mandamus to recuse under 28 U.S.C. § 144 where trial judge made numerous remarks indicating hostility to petitioners). Rather, Petitioners are entitled to recusal only if the remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, —— U.S. at ——, 114 S.Ct. at 1157; *Mitchell v. Kirk*, 20 F.3d 936, 938 (8th Cir.1994). As discussed above, Petitioners have identified, and we have discovered, no remarks that indicate such a high degree of antagonism as to make fair judgment impossible. On the contrary, Judge Battey repeatedly notes a duty independently to review a proposed plea agreement. This review, even if premature, leaves us utterly unconvinced that Judge Battey is incapable of rendering a fair judgment. A judge is presumed to be impartial, and Petitioners bear the substantial burden of proving otherwise. *Pope v. Federal Express Corp.*, 974 F.2d 982, 985. (8th Cir.1992) Petitioners have failed to carry this burden, and thus fail to demonstrate a clear and indisputable right to recusal even if the remarks reveal that Judge Battey has a negative opinion of them.

**2. Is recusal required because of apparent bias?**

█ Petitioners also argue that even if Judge Battey's remarks do not evince actual bias, they create a situation in which Judge Battey's "impartiality might reasonably be questioned."[5] In making this argument, Pe-

---

4. Petitioners rely heavily on this passage to support their argument that Judge Battey has prejudged them (*i.e.*, has already concluded that there are relative degrees of fault), but this argument ignores the fact that the sentence begins "[f]rom what I see in filings" (which included several motions for severance) and is immediate-

ly followed by a sentence reading, "Some *may* be marginally involved; others *may* be highly involved. But *I will wait*." (emphasis added).

5. Petitioners argue (without even mentioning *Liteky*) that the extrajudicial source doctrine that we applied in *United States v. Thirion*, 813 F.2d

titioners rely heavily upon *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), which stated:

> Use of the word 'might' in the [recusal] statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality.

*Id.* at 1111.

In *United States v. Poludniak*, 657 F.2d 948 (8th Cir.1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982), we applied an objective standard of reasonableness under § 455(a) and favorably quoted the language of the Fifth Circuit. *Id.* at 954. Although we agree with Petitioners that the quoted language from *Potashnick* is an accurate statement of the law of this circuit, Petitioners misapply that law to the facts of this case. In *Poludniak*, we concluded that a reasonable person knowing all the circumstances would not question the impartiality of the Chief Judge of the Eastern District of Missouri who presided over a criminal case in which the victim was a United States Senator from Missouri, while simultaneously attempting to obtain increased court funding through that senator. *Id.* Here, as in *Poludniak*, we believe that a reasonable person knowing all the circumstances would not question the judge's impartiality. A reasonable person who knew all the circumstances would know that Judge Battey was intimately familiar with the underlying criminal prosecution. This person would know that Judge Battey had "lived with" the criminal prosecution for over two years, and had presided over this case that generated over 350 docket entries. This person would know that Judge Battey had also presided over a civil case involving many of the same facts and parties.[6] In light of Judge Battey's familiarity and lengthy association with the case, a reasonable person simply would not view these isolated remarks as an occasion for concern. We believe that the person on the street would agree with the common-sense analysis of *Liteky* and conclude that, in light of the fact that it "has long been regarded as normal and proper for a judge to sit" in successive stages of a single case, an opinion held by a judge as a result of what he learned in earlier proceedings is not bias, prejudice or partiality. *Liteky*, —— U.S. at —— 114 S.Ct. at 1155.

### 3. Is recusal required because of a violation of Federal Rule of Criminal Procedure 11?

■ Federal Rule of Criminal Procedure 11(e) provides the basic procedure to be followed when an accused and the government enter into "discussions with a view toward reaching a [plea] agreement." Rule 11(e) concludes with an explicit prohibition: "The court shall not participate in any such discussions." Courts have consistently interpreted Rule 11(e) as a bright line rule barring any court participation in the plea bargaining process. *See, e.g., United States v. Olesen*, 920 F.2d 538, 540 (8th Cir.1990) ("Appellate courts have consistently prohibited district courts from interfering in the plea bargaining process."); *Mack*, 655 F.2d at 847 ("In addition to the Rule 11 requirements, this

---

146, 155 (8th Cir.1987), is somehow inconsistent with this standard. We disagree. The extrajudicial source doctrine of *Thirion* is consistent with the reasonable person standard of § 455(a) because the extrajudicial source doctrine recognizes that no reasonable person would question a judge's impartiality simply because the judge had previously been exposed to evidence concerning the case before him. Although we did not mention it in *Thirion*, as it was not then at issue, the "pervasive bias" exception to the extrajudicial source doctrine recognizes that there are certain (rare) situations in which a judge's impartiality might reasonably be questioned notwithstanding the fact that the information he obtained was obtained through the judicial process. *Liteky*

confirms our analysis. *Liteky*, —— U.S. at ——, ——, 114 S.Ct. at 1152, 1155.

**6.** An abbreviated citation for this case is: *Black Hills Inst. of Geological Research v. United States Dep't of Justice*, 967 F.2d 1237 (8th Cir.1992) (appeal of Judge Battey's denial of preliminary injunction enjoining seizure of Sue), *appeal after remand*, 978 F.2d 1043 (8th Cir.1992) (appeal of Judge Battey's appointment of custodian pendente lite for Sue), *remanded*, 812 F.Supp. 1015 (D.S.D.1993) (judgment for defendants on "quiet title" action to determine validity of sale of Sue), *affirmed*, 12 F.3d 737 (8th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 61, 130 L.Ed.2d 18 (1994).

Court requires additional safeguards in the plea bargaining process: ... (3) Judges are not to participate in the bargaining; their role is to be limited to acceptance or rejection of agreements after a thorough review of all relevant factors."); *United States v. Garfield,* 987 F.2d 1424, 1426 (9th Cir.1993). We share Judge Battey's concern that his comments during the September 21 hearing may have been a violation of Rule 11(e). The Assistant United States Attorney must present a plea agreement to the court in pristine form, uncluttered by the district court's views.

Even assuming the remarks to have been a violation of Rule 11(e), Petitioners have identified, and we have found, no authority for the proposition that such a violation provides a basis for the remedy of recusal at this stage of the litigation.[7] In light of the lack of authority for recusal, we are not prepared to hold that Petitioners have established a clear and indisputable right to recusal on this basis.

## III. CONCLUSION

Because we find that Petitioners have failed to demonstrate a clear and indisputable right to recusal, we deny their petition for a writ of mandamus requiring recusal. Petitioners have not demonstrated a clear and indisputable right to recusal because Judge Battey's remarks do not indicate that he is incapable of rendering a fair judgment or that a reasonable person knowing all the facts would question his impartiality. Assuming his remarks violate Rule 11(e), this violation does not provide a basis for the remedy of recusal at this stage of the litigation.

BEAM, Circuit Judge, concurring specially.

I concur in the court's opinion. I write separately because of my concerns about the violation of Federal Rule of Criminal Procedure 11(e), recognized by the district court in its letter to counsel dated September 21.

The court's opinion describes the meeting of September 21 as a "status hearing." I think it could also be appropriately described as a hearing on an unpresented plea agreement containing alleged terms outlined in the *Rapid City Journal* newspaper. Indeed, it appears that the district court convened the proceeding to discuss the purported agreement after reading the newspaper account.

As the court's opinion recognizes, the district court's duties with regard to a plea agreement properly begin when the agreement is formally presented to the court by the parties, Fed.R.Crim.P. 11(e), not when rumors of its potential promulgation are aired in the local paper. And, although I agree that the statements made at the September 21 discussion do not merit recusal of the district court, I am troubled by the chilling effect that this meeting may have had and may continue to have on the parties' attempt to work out an acceptable plea bargain.

The district court, at this time, is not (or at least should not be) in a position to fully know the strengths and/or weaknesses of the criminal prosecution from the point of view of either the prosecution or the defense. The purpose of the hearing contemplated by Federal Rule of Criminal Procedure 11(e)(2) is to allow the district court to gather such information and to put the court in a position to accept or reject the agreement, subject, of course, to appellate review for abuse of discretion.

The premature discussions in this case have, seemingly, turned this well conceived approach on its head. Thus, I would instruct the parties to disregard the September 21 "status hearing" insofar as plea negotiations are concerned and to present to the district court, if a meeting of the minds can be reached, such agreement, if any, that the strengths or weaknesses of their respective

---

**7.** Although we express no view on whether, assuming the remarks were a violation of Rule 11, the remedy of recusal could become available later in the litigation, we note that Petitioners may request a different sentencing judge in the event of a conviction after trial. *See United*

*States v. Adams,* 634 F.2d 830, 835–43 (5th Cir. Unit A Jan. 1981) (defendant entitled to resentencing before different judge but not to new trial where trial judge violated Rule 11(e) and defendant pleaded not guilty and was convicted).

cases may dictate. I understand the district court's letter of September 21 to convey this same message.

This is a matter in which the public interest may best be served by a plea bargain. If it is, such an agreement should be formulated and presented to the district court for consideration.