# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

—————

No. 96-2586

—————

United States of America,

    Plaintiff - Appellee,

v.

Wardell Washington,

    Defendant - Appellant.

Appeal from the United States
District Court for the
Western District of Arkansas.

—————

Submitted:  December 10, 1996

Filed:  March 24, 1997

—————

Before FAGG, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

—————

LOKEN, Circuit Judge.

Wardell Washington appeals his bank fraud conviction and sentence. He raises upward departure, suppression, and venue issues and argues that the district judge[1] should not have conducted the sentencing after participating in earlier plea discussions.  We affirm.

In June 1993, a prison acquaintance was arrested for bank fraud and left his automobile and check protector in Washington's care.  For the next eight months, Washington used these items in his own bank fraud scheme. He obtained blank birth certificates and taught his drug addict accomplices, Kim LeFevers and Pam Swaffar, how to acquire Arkansas identification that could be used

———————————

[1]The HONORABLE HARRY F. BARNES, United States District Judge for the Western District of Arkansas.

to open bank accounts in different names around the State. Washington drove LeFevers to various banks where she opened fictitious accounts. Using the check protector, Washington created bogus checks payable to the fictitious account holders. LeFevers deposited the checks and withdrew cash before the checks bounced. She turned half the proceeds over to Washington, who was never seen in the banks.

Washington was charged with conspiracy to defraud five banks and with four specific counts of bank fraud in violation of 18 U.S.C. §§ 371 and 1344. The jury convicted him on all five counts. Imposing an upward departure, the district court set the guidelines sentencing range at 57 to 71 months and sentenced Washington to seventy-one months in prison. On appeal, Washington raises two sentencing issues, a group of related suppression issues, and a venue challenge to one of the bank fraud counts. We will discuss those issues in the order raised, setting forth additional background facts relevant to each.

## I. The Upward Departure.

Washington's presentence report recommended a base offense level of fourteen and a criminal history category of IV, producing a guidelines range of 27 to 33 months. Citing U.S.S.G. §§ 4A1.3 and 5K2.0, the district court departed upward to a base offense level of eighteen and criminal history category VI, producing a guidelines range of 57 to 71 months. The court explained:

> The defendant has been involved in criminal activity since he was sixteen or seventeen years old. This activity consists of . . . [a]ssault, disturbing the peace, burglary, grand larceny, carrying prohibited weapons, possession of restricted drugs, possession of heroin, distributing heroin, forgery, numerous counts and now conspiracy to commit bank fraud and I haven't touched all of them.

-2-

Mr. Washington, you have exhibited no remorse or contrition for your behavior. You have exhibited no efforts to correct your lifestyle, from [age] sixteen to now. You have continued to cheat, to defraud, to steal, to burglarize and deal in drugs from your early youth to now. You have used people . . . . you've sued your first lawyer, you've sued the probation officer, you've been appointed another lawyer and now I understand you've got a suit against the FBI agent. . . . Obviously the Sentencing Commission . . . could not have taken all of this into consideration when structuring these guidelines.

\*   \*   \*   \*   \*

In this case you used the identity of Edith Cass[a]dy to perpetuate the fraud. Edith Cass[a]dy is an innocent victim. . . . [W]arrants for arrest had been issued to her. [The] Sentencing Guideline makes no provision for this type of situation.

Washington argues that the district court erred in imposing an upward departure because his criminal history and the minor emotional injury to victim Cassady do not put this case beyond the Guidelines "heartland." The district court has discretion to depart if there is an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). We review departure decisions under a "unitary abuse-of-discretion standard," United States v. Koon, 116 S. Ct. 2035, 2048 (1996), deferring to the district court on most departure issues "including the critical issue[] of '[w]hether a given factor is present to a degree not adequately considered by the Commission.'" United States v. Kalb, 105 F.3d 426, 428 (8th Cir. 1997), quoting Koon, 116 S. Ct. at 2047. "If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account." Koon, 116 S. Ct. at 2045.

In this case, the district court based its upward departure on special factors that are "encouraged" in the Guidelines. First, as to criminal history, § 4A1.3 encourages a departure if defendant's criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." The district court concluded that Washington's extensive criminal history puts him outside the "heartland" of offenders falling within criminal history category IV.[2] We agree. Washington was 52 years old when sentenced. He began committing serious crimes at age 16. His many serious offenses prior to 1975, which were excluded in determining criminal history category, see § 4A1.2(e), may be considered under § 4A1.3. See U.S.S.G. § 4A1.2, comment. (n.8). In addition, Washington has been incarcerated one-half of his adult life for a wide variety of serious offenses. He has resumed criminal activity promptly upon each release from prison, committing the instant offenses, and earlier offenses, while on parole. It would seem that only incarceration kept his criminal history as low as category IV. The district court did not abuse its sentencing discretion in departing upward to category VI. See United States v. Nomeland, 7 F.3d 744, 747-48 (8th Cir. 1993); United States v. Saunders, 957 F.2d 1488, 1492 (8th Cir.), cert. denied, 506 U.S. 889 (1992).

Second, the district court departed upward four base offense levels under § 5K2.0, primarily because Washington opened a fictitious account at Superior Federal Bank in the name of Edith Cassady, an elderly Hot Springs waitress. As a result of this fraud, which resulted in a rather small loss to the bank, a warrant

[2]Washington's PSR listed the following offenses leading to convictions: assault (9/60); disturbing the peace (7/61); burglary (11/64); carrying prohibited weapon (9/65); grand larceny (6/68); restricted drugs possession (4/70); heroin possession (3/74 and 10/74); heroin distribution (2/75); and forgery (12/87 and 8/88). According to the PSR, he was incarcerated from 4/70 to 4/71; 7/75 to 1/83; 7/88 to 4/93; 3/94 to 8/94; and 5/95 to 7/95.

issued for Cassady's arrest, and police questioned her at home before concluding she was innocent of the fraud. Once again, the district court acted upon an encouraged departure factor. See § 2F1.1 comment. (n.11) (false identification documents offense may warrant upward departure "where the actual loss does not adequately reflect the seriousness of the conduct"). Here, though the monetary loss to each defrauded bank was not large, Washington preyed upon his drug addict accomplices, directed his scheme at numerous banks and other merchants, and caused anguish to the elderly Ms. Cassady. In view of his history as an "unrepentant, incorrigible recidivist," the district court did not abuse its discretion in imposing a four-level upward departure under § 5K2.0. See United States v. Lara-Banda, 972 F.2d 958, 960 (8th Cir. 1992).

## II. Judicial Participation in Plea Negotiations.

Washington next argues that the district court should not have sentenced him after participating in earlier plea negotiations. In September 1995, Washington pleaded guilty to one count of bank fraud. However, when the PSR recommended a guidelines range of 37 to 46 months in prison, Washington moved to withdraw the plea. At the February 1996 motion hearing, the district court concluded its remarks as follows:

> Well, I think there was some mention of eighteen months and I think as we sat here with your attorney and . . . looked at the charges, your participation, your acceptance of responsibility, and whether you were a major or a minor participant in the scheme, in looking a the sentencing guidelines, [counsel] and I looked at what we thought the guidelines would reveal.
>
> I acknowledge that I participated at least to that extent and I think it would be a tragedy to the rights of human beings in this country to make you stand by that plea. I'm not going to do that. I'm going to grant your motion to withdraw your plea.

Washington was then tried and convicted on all five counts. Early in his sentencing hearing, counsel argued that Washington is entitled to an acceptance of responsibility reduction even though he sued the probation officer. The district court interjected:

>        THE COURT:  . . . I want Mr. Washington to understand what occurred at that point. . . . [W]e attempted, [counsel] attempted to see if they couldn't work out a plea and they talked about principal role, amount in controversy, acceptance of responsibility and all of those. It was represented to me that there might well be an avenue and opening of some 17 to 21 months and I think counsel for the government and [defense counsel], in your behalf, said would you accept -- could you accept something in that range. . . . Then [the probation officer] took what he understood the facts to be without a trial and came up with the [PSR] and that [PSR] is just that. It's a tool to assist me in sentencing. So . . . I can understand that you might have felt that something was going [on] here, but it was not. . . . I want the record to say that this court is not some back room where we work deals to put you in [prison]. . . .

>        COUNSEL FOR WASHINGTON: I appreciate it your Honor. I think that's absolutely accurate. I think the problem is that Mr. Washington was not himself privy to those conversations.

On appeal, Washington argues that he has a right to be resentenced by another judge. He did not raise this issue in the district court, so the question is whether the court committed plain error.

Rule 11(e)(1) of the Federal Rules of Criminal Procedure provides that the district court "shall not participate" in any discussions concerning a possible plea agreement. This is an "absolute prohibition." United States v. Adams, 634 F.2d 830, 835 (5th Cir. 1981). It applies to judicial participation in plea negotiations between counsel, as well as to discussions held in the defendant's presence. See United States v. Barrett, 982 F.2d 193, 194 (6th Cir. 1992).

In this case, the district court acknowledged it participated in discussions prior to Washington's guilty plea and granted his motion to withdraw the plea. This remedy cured any possibility that the court had somehow coerced Washington into pleading guilty. However, that is not the only purpose served by Rule 11(e)(1). It also furthers "the sound principle that the interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any question or suspicion when it becomes his duty to impose sentence." United States v. Werker, 535 F.2d 198, 203 (2d Cir.), cert. denied, 429 U.S. 926 (1976); accord Barrett, 982 F.2d at 195; Adams, 634 F.2d at 840. Thus, the issue here is not whether the district court violated Rule 11(e)(1). The real issue is one of remedy -- did the court commit plain error by not recusing from the case, either before trial or before sentencing?

We answered part of this question in In re Larson, 43 F.3d 410 (8th Cir. 1994), another case in which the district court, before trial, acknowledged it had improperly commented on the parties' plea negotiations. Defendants immediately petitioned for a writ of mandamus. We denied that petition because a violation of Rule 11(e)(1) does not provide "a basis for the remedy of recusal at this stage of the litigation." Id. at 416. Larson confirms that the court did not commit plain error by presiding over Washington's trial after it granted his motion to withdraw the guilty plea.

That leaves a more difficult question -- whether the court was obliged to recuse, *sua sponte*, after Washington's conviction and before his sentencing. That was the remedy mandated by the Fifth Circuit in Adams, 634 F.2d at 842, where the district court's Rule 11(e)(1) violation was both unacknowledged and more egregious. We noted the issue but adopted a more cautious position in Larson: "the remedy of recusal could become available later in the litigation . . . *Petitioners may request* a different sentencing

judge in the event of a conviction after trial."  43 F.3d at 416 n.7, citing <u>Adams</u> (emphasis added).

In this case, the district court advised Washington of the court's earlier participation when it granted his motion to withdraw the plea.  The court reminded him of the incident early in the sentencing hearing.  Fully apprised of the situation, Washington made no request for a different sentencing judge.  Because footnote 7 in <u>Larson</u> defines the right to a different judge as one that must be requested, we cannot conclude that the district court committed plain error in sentencing Washington after he failed to raise the issue.  Moreover, in our view, the <u>Larson</u> footnote states the proper rule.  Though Washington is now dissatisfied with his sentence, he made a conscious decision to be sentenced by Judge Barnes and should not be entitled to revisit that decision.  Stated differently, there was no plain error.

### III. Suppression Issues.

Police Detective David Davis and FBI Agent Travis Sorrows investigated this fraud scheme in the fall of 1993.  In February 1994, LeFevers opened an account at a bank in Russellville, Arkansas, under the name Nikki Hester.  A bank employee recognized LeFevers as the woman who opened an account under a different name in October.  The employee notified Detective Davis, telling him that LeFevers left the bank in a car driven by a man.  Three days later, a Russellville police officer saw the same car at 3:00 a.m. with its trunk open.  He followed the car to a convenience store, asked the two occupants where they were staying, and allowed them to leave.  The woman passenger said her name was Cindy White, but a store attendant told the officer she had discarded an identification card bearing the name Nikki Hester.

Police then went to the motel where the two said they were staying and knocked on the door of a room registered to Nikki

Hester.  There was no answer, but they heard people moving about and paper shredding, and the room's smoke alarm sounded.  Thirty minutes later, the officers stopped Washington and LeFevers as they left the motel in the same car.  Claiming to be Nikki Hester, LeFevers admitted falsely identifying herself and was arrested for criminal impersonation.  She consented to a search of the motel room, where police found a word processor, numerous documents, and burned document scraps.  Later that morning, when Detective Davis learned "Nikki Hester" had been arrested, he proceeded to the motel and arrested Washington for bank theft, a state offense.

**A.** Washington argues that this arrest was not supported by probable cause, an issue we review de novo.  See Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996).  In conducting that review, we determine from the totality of the circumstances whether a prudent person would believe Washington had committed or was committing a crime, giving Detective Davis "substantial latitude in interpreting and drawing inferences from factual circumstances."  United States v. Hawkins, 59 F.3d 723, 727 (8th Cir. 1995), vacated and remanded on other grounds, 116 S. Ct. 1257 (1996).  Having carefully reviewed the record, we agree with the district court that Detective Davis had probable cause to believe that Washington had participated with LeFevers in a bank theft scheme.

**B.** Agent Sorrows interviewed Washington at the Polk County jail.  Washington agreed to answer questions but refused to sign a Miranda rights waiver form.  He admitted providing LeFevers with birth certificates and blank checks to defraud various banks.  He also agreed to surrender tools of the scheme to Sorrows, including the check protector.  Washington declined to talk about the involvement of others until he had consulted an attorney.  Later that evening, Washington's son Rodney delivered numerous checks, fake IDs, birth certificates, and the check protector to Sorrows.

Washington argues that interrogation was improper after he refused to sign a <u>Miranda</u> rights waiver form. Based upon suppression hearing testimony, the district court found that Washington was informed of and expressly waived his <u>Miranda</u> rights, a credibility determination that is not clearly erroneous. <u>See, e.g.</u>, <u>United States v. Heath</u>, 58 F.3d 1271, 1275 (8th Cir.), <u>cert. denied</u>, 116 S. Ct. 240 (1995). His refusal to sign a waiver form is not dispositive. <u>See</u> <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979); <u>United States v. House</u>, 939 F.2d 659, 662 (8th Cir. 1991). Washington further argues that Sorrows conducted the questioning after Washington's Sixth Amendment right to counsel had attached, citing <u>Brewer v. Williams</u>, 430 U.S. 387, 398 (1977). This issue was not raised in the district court. There was no plain error because Washington, properly warned, waived his Sixth Amendment rights by electing to answer Sorrows's questions. <u>See</u> <u>Patterson v. Illinois</u>, 487 U.S. 285, 292-93 (1988).

Finally, Washington asserts that Sorrows improperly continued the questioning after Washington requested an attorney, citing <u>Edwards v. Arizona</u>, 451 U.S. 477, 484 (1981). However, "[n]othing in <u>Edwards</u> requires the provision of counsel to a suspect who consents to answer questions without the assistance of a lawyer." <u>Davis v. United States</u>, 114 S. Ct. 2350, 2356 (1994). Washington did not request that an attorney be present. He simply declined to answer any questions regarding the involvement of others until he had spoken to an attorney.

**C.** Washington also asserts that consensual searches of his automobile and storage unit and the surrender of incriminating evidence were unconstitutionally coerced. The record does not support that contention.

-10-

**IV. The Venue Issue.**

Count Two of the indictment charged Washington with executing a scheme to defraud the Superior Federal Bank, located in the Western District of Arkansas. However, at trial the government proved that LeFevers opened a fictitious account and cashed bogus checks at Superior Federal branches located in the Eastern District of Arkansas. Washington therefore argues that the conviction on Count Two violates his Sixth Amendment right to be tried in the "district wherein the crime shall have been committed." See also Fed. R. Crim. P. 18.

The government argues that venue was proper in the Western District because Superior Federal is federally insured at its main office in the Western District, all fifty-eight branches "operate as sub-offices of the main institution," and therefore the fraud's effect was on a Western District financial institution. In this age of interstate banking, we suspect that the government's theory would expand bank fraud venue far beyond what is reasonable or sufficiently sensitive to Sixth Amendment concerns, yet the government carefully avoids discussing the full ramifications of its venue theory. Here, for example, Superior Federal had branches in Oklahoma and was owned by a large St. Louis bank. We will put aside the government's superficially argued theory and look more closely at the specific facts of the offense in question.

Venue "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Anderson, 328 U.S. 699, 703 (1946). An offense begun in one district and completed in another, or committed in more than one district, may be prosecuted in any district in which it was begun, continued, or completed. See 18 U.S.C. § 3237(a); United States v. Brakke, 934 F.2d 174, 176 (8th Cir. 1991). Count Two charged Washington with executing "a scheme or artifice to defraud a financial institution," 18 U.S.C. § 1344. As the words suggest,

a "scheme to defraud" is, at least in most cases, a series of acts designed to obtain money or property fraudulently, not simply the one specific act of using the mails (mail fraud) or cashing a bogus check (bank fraud). See United States v. Garfinkel, 29 F.3d 1253, 1259 (8th Cir. 1994); United States v. Hubbard, 889 F.2d 277, 280 (D.C. Cir. 1989). Thus, for purposes of § 3237(a), it is nearly as broad as a criminal conspiracy, for which venue is proper in any district in which any conduct comprising the conspiracy occurred. See United States v. Guy, 456 F.2d 1157, 1163 (8th Cir.), cert. denied, 409 U.S. 1001 (1972).

In this case, Washington provided instruments of fraud and training to commit bank fraud to LeFevers, a resident of the Western District. Washington travelled to the Western District and drove LeFevers to various Arkansas banks, where she executed the scheme to defraud. One of those banks was a branch of Superior Federal, where LeFevers (i) opened a fictitious account in the name of Edith Cassady, another resident of the Western District, and (ii) signed a bank signature card reciting the bank's location in the Western District. In these circumstances, we conclude that the Count Two offense was committed in part in the Western District for purposes of determining venue under § 3237(a). Moreover, trial of Count Two in the Western District along with other offenses that were part of the same scheme did not subject Washington to the "unfairness and hardship [of] trial in an environment alien to [him]." United States v. Johnson, 323 U.S. 273, 275 (1944). His venue motion was properly denied.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-