343 F.Supp.2d 824 (2004)
UNITED STATES of America, Plaintiff,
v.
Isabel LOPEZ and Goodwill Medical Services, Inc., Defendants.
No. 4:04 CR 115 CDP.
United States District Court, E.D. Missouri, Eastern Division.
September 21, 2004.
*825 Lawrence R. Metsch, Metsch and Metsch, Miami, FL, for Defendant.
Dorothy L. McMurtry, Office of U.S. Attorney, St. Louis, MO, for Plaintiff.

ORDER
PERRY, District Judge.
This case is before the Court on the motion of defendant Lopez to dismiss the case for improper venue or in the alternative to transfer the case to the United States District Court for the Southern District of Florida. Pursuant to 28 U.S.C. § 636(b), the motion was referred to United States Magistrate Judge Terry I. Adelman. Judge Adelman held a hearing, received briefs and supplemental statements from the parties, and issued a Report and Recommendation on the motion. He recommended that I deny the motion in its entirety, concluding that venue was proper in this district and that transfer was not appropriate under Rule 21(b), Federal Rules of Criminal Procedure. Defendant timely objected to the recommendation that the motion be denied.
I have conducted de novo review of all matters related to the motion, including listening to the recording of the hearing before Judge Adelman. I agree with Judge Adelman that venue is proper in this district, as the crime was committed in this district as well as in other districts, because the defendants used a St. Louis billing intermediary, and the allegedly false statements were submitted from St. Louis. However, I disagree with Judge Adelman regarding whether the case should be transferred under Rule 21(b). Judge Adelman correctly listed the factors that the Court should conclude in making this determination, and concluded that the question was a very close one.
This is an issue committed to the Court's discretion. Judge Adelman, in concluding that the case was a very close one, found that the factors of the defendant's location and the location of counsel favored transfer, although the latter only slightly did so. He found that most of the factors properly considered were neutral, *826 and neither favored nor disfavored transfer. The only factor that he found favored not transferring the case was the government's statement that transfer would substantially disrupt the business of MedNet, the Missouri billing company, whose principals would be required to travel to Florida to testify. I agree with Judge Adelman's assessment of these factors as a factual matter, but I believe that in weighing all the factors, transfer should be granted. In particular, I do not believe that the potential disruption to the business of MedNet is sufficient to outweigh the factors favoring transfer. The government argues that the entire case can be tried in three days, so MedNet's personnel would only be needed in Florida for that very limited period of time, which does not appear to me to be a substantial disruption. I also am skeptical of the government's statement about its witnesses, as it claims it can make its case by calling only the MedNet officials and the FBI agent, along with an expert witness. In any event, even if the government thinks it need not call witnesses from Florida, I believe that defendant's right to do so may be compromised by requiring the trial to take place here. I will therefore grant the defendant's motion to transfer, and will order the case transferred to Florida for trial.
Judge Adelman appointed a St. Louis lawyer to represent the corporation, which is apparently defunct. I recommend that appointed counsel file a written motion with the Florida court to be relieved from the representation, as requiring a St. Louis lawyer appointed under the Criminal Justice Act to travel to Florida seems a waste of the Court's limited funds to pay appointed counsel, when presumably there are Florida CJA attorneys who would be available to represent this defendant, if the Florida court believes appointment of counsel is appropriate.
Accordingly,
IT IS HEREBY ORDERED that the motion of defendant to dismiss the case for lack of venue is denied, and the alternative motion to transfer the case to the Southern District of Florida [# 17] is granted, and this case will be transferred to the Southern District of Florida for trial pursuant to Rule 21(b), Fed.R.Crim.P. The report and recommendation of Judge Adelman [# 35] is adopted in part and rejected in part as stated above.
IT IS FURTHER ORDERED that the Clerk of Court shall transfer this case to the United States District Court for the Southern District of Florida for trial.

MEMORANDUM AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
ADELMAN, United States Magistrate Judge.
All pretrial motions in the above case were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). A hearing on the defendant's motion was held on June 30, 2004 and, thereafter, by order of July 16, 2004, the parties were required to submit supplemental briefs no later than July 25, 2004:
#17 Motion of Defendant Isabel Lopez to Dismiss Indictment for Improper Venue, or in the Alternative to Transfer this Case to the U.S. District Court, Southern District of Florida.
The defendant moves to dismiss the indictment stating that the offenses alleged in the indictment were "committed" if at all in the Southern District of Florida or elsewhere, and not in the Eastern District of Missouri. Thus, the defendant alleges that the indictment should be dismissed for improper venue as that term is used in *827 Article III, Section 2, Clause 3 of the United States Constitution, the Sixth Amendment to the Constitution, and Rule 18, Federal Rules of Criminal Procedure. As an alternative, the defendant asserts that the case should be transferred to the Southern District of Florida "for the convenience of the parties and witnesses, and in the interest of justice" pursuant to Rule 21(b), Federal Rules of Criminal Procedure.
In order to determine and rule on the motion, the undersigned will take into consideration the indictment in this matter, the record made at the motion to dismiss hearing including the documents presented by the government, and the supplemental memorandum information filed by the parties on or about July 26, 2004. The indictment in this matter alleges in Count I of the indictment a violation of 18 U.S.C, § 1347, and in Counts II through XXIII, violations of 18 U.S.C, § 1035. In addition, the indictment charges the defendants in this case, including Isabel Lopez and the company with causing the above violations to be committed. The relevant portions of 18 U.S.C. § 1347 entitled "Health Care Fraud," provide as follows:
Whoever knowingly and willfully executes or attempts to execute a scheme or artifice 1) to defraud any health care benefit program.. .in connection with the delivery of or payment for health care benefits items or services shall be fined under this title or imprisoned not more than ten years or both.
In addition, the relevant portions of 18 U.S.C § 1035 entitled "False Statements Relating to Health Care Matters," provides as follows:
Whoever in any matter involving a health care benefit program knowingly and willfully 1) falsifies, conceals or covers up by any scheme trick or device a material fact; or 2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry in connection with the delivery or payment for health care benefits, items or services shall be fined and imprisoned according to law.
In addition, 18 U.S.C, § 2, in pertinent part alleges as follows:
Whoever willfully causes an act to be done, which if directly performed by him or another, would be an offense against the United States is punishable as principal.
The indictment in this matter alleges the following facts: Goodwill Medical Services, was a corporation doing business in Florida, engaged in the sale of durable medical equipment. MedNet, Inc., was a corporation organized, existing, and doing business in the State of Missouri, providing billing services to health care providers such as Goodwill Medical. MedNet had its corporate headquarters in St. Louis, Missouri. Goodwill Medical Services was a Medicare provider, and, as such, could be reimbursed by the Medicare program for durable medical equipment provided pursuant to and within the regulations of the Medicare program. Goodwill could be reimbursed by Medicare only when a physician certified in writing that the equipment was medically necessary. In addition, it was necessary for Goodwill to present a request for payment and electronically transmit medicare claims to Medicare and their contractors. In addition, the law provided that Goodwill must furnish and certify the accuracy of the information on the Medicare claim form including the identity of the patient, the provider number, the service provided, and the medical necessity for the service rendered. In addition, the indictment alleges that Medicare *828 and its carriers relied and paid claims on the basis of accurate information in the providers' claim forms. Count I charging a violation of 18 U.S.C. § 1347, alleged that Isabel Lopez also known as Chabeli Lopez and Goodwill Medical Services, Inc., knowingly and willfully, executed and attempted to execute a scheme or artifice to defraud Medicare and the Florida Medicaid Program in connection with the delivery and payment of health care benefits and services. It alleged in particular that Goodwill submitted or caused to be submitted to a Medicare carrier in South Carolina claim forms seeking reimbursement for medical equipment which claim forms contained false and fraudulent facts and statements which the defendants knew to be false. As part of the scheme, Goodwill obtained prescriptions for durable medical equipment which they knew were forged and falsely represented that patients needed the equipment. In addition, as part of the scheme, the defendants procured from an orthopedic appliance company documents that falsely represented that the company had fitted patients for orthotic devices to be provided by Goodwill to Medicare recipients when in fact the documents were false and were created to justify the false claims submitted to Medicare. The indictment further alleges that the defendants also created and submitted to Medicare false delivery documents that represented that the patients had received the durable medical equipment, when in fact they had not. In addition and importantly, the indictment alleges that Lopez and Goodwill contracted specifically with MedNet in St. Louis, Missouri, to prepare, fill out, justify (if necessary), and to submit the fraudulent claims for Goodwill Medical to Medicare for reimbursement to Goodwill. In furtherance of this, Lopez and Goodwill Medical in Florida submitted to MedNet in St. Louis by facsimile copy false information for each claim form which MedNet then prepared in St. Louis and submitted to Medicare in South Carolina for payment to Goodwill. After preparing the claims, MedNet electronically transmitted the claims for payment from St. Louis to Medicare in South Carolina. As to Counts II through XXIII, the allegations of the fraud in Count I were again restated, and it was alleged that on each of Counts II through XXIII, Isabel Lopez knowingly and willfully used and caused to be made materially false writings and documents in connection with the delivery of Medicare health benefits stating that Goodwill had provided durable medical equipment to certain patients and that the equipment was medically necessary when, in fact, she knew it was not.
In addition, at the hearing on the motion, the government presented certain documents which showed that Goodwill Medical and the defendant Isabel Lopez sought out MedNet and its employees to prepare, fill out, and to file the claims for payments in this matter. Specifically, Isabel Lopez signed a contract with MedNet in St. Louis, Missouri, which contract stated that MedNet would receive six percent of the total amount of payments made by Medicare to Goodwill, and that all the documentation would be accurately provided to MedNet for the preparation and submission of these claims to Medicare on behalf of Goodwill. The contract specifically stated that MedNet while preparing and submitting the claims for payment would not be responsible for the accuracy of the information presented but that Goodwill would be responsible for the accuracy.
In addition, at the outset of the agreement which Lopez signed with MedNet in St. Louis, the defendant completed forms submitted to her by MedNet from St. Louis which allowed MedNet to process her claims electronically. By doing this, *829 Lopez understood that MedNet could get the claims paid within two or three weeks rather than four or five weeks. The forms authorized MedNet to receive the electronic remittance notices from Medicare on behalf of Goodwill Medical, which said notices contained payment information on the claims. In addition, Goodwill designated to MedNet the bank in which they wished their claim payments to be deposited.
Further, as proof that MedNet was not randomly selected and was integral to the fraud scheme, the government presented documentation in the form of exhibits and made statements at the hearing showing that on several counts of the indictment which charged a scheme to defraud under 18 U.S.C. § 1347 and the Medicare fraud under 18 U.S.C. § 1035, false documentation on these claims were submitted to MedNet so that they could then prepare detailed claim forms to be sent to Medicare for payment to Goodwill. The documents submitted by the government which the undersigned assumes will be introduced at trial show continuing, ongoing and detailed correspondence between the defendant Isabel Lopez and Goodwill Medical and MedNet presenting information and directions to MedNet on how claims should be filed with Medicare, when they should be filed, and providing back up documentation on the claims. MedNet then prepared the claims in St. Louis and submitted them electronically to Medicare in South Carolina. In addition, the documents indicate that when Medicare evidently began to question the validity of some of the prescriptions and fittings, MedNet checked with the doctors involved to try to verify the validity of the prescriptions and then asked and received explanations from the defendant as to the discrepancies and questions which arose on the claims MedNet was submitting to Medicare.
Thus, the undersigned concludes that the documentation submitted by the government at the hearing shows that the selection of MedNet to process and file claim forms for Goodwill was not random, and that numerous documents were sent directly from the defendant to MedNet with a significant amount of correspondence back and forth between MedNet and Lopez in an effort to prepare and process the claims so that they would be paid. Thus, the government alleges that the use of MedNet was not random, and that their evidence will show that the use of MedNet and information provided to MedNet in St. Louis prior to it being sent on to Medicare by MedNet was an integral part of the fraud scheme.

A Venue
Any discussion of venue in a criminal case must begin with the constitutional provision that "the Trial of all crimes... shall be held in the state where said crime shall have been committed." United States Constitution, Article III, Section 2. The Sixth Amendment to the Constitution further provides that, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and District wherein the crime shall have been committed." It is worth noting that these constitutional provisions were adopted against a background wherein citizens of the colonies were being carried away to England to be tried by the British for crimes committed in the colonies. See United States v. Flaxman, 304 F.Supp. 1301, 1304 (D.N.Y.1969). The constitutional rule is further embodied in Rule 18, Federal Rules of Criminal Procedure, which states that, "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." "Questions of venue in criminal cases, therefore...raise *830 deep issues of public policy in the light of which legislation must be construed." United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236 (1944).
Early in our history, application of these principles often resulted in a trial of a defendant in the district where he resided, a practice looked upon with some favor originally. See Hyde v. Shine, 199 U.S. 62, 78, 25 S.Ct. 760, 50 L.Ed. 90 (1905). One commentator has noted that, "The framers could hardly have anticipated the increased mobility of the population, and the expansion of notions of vicarious participation in crime, that today often make it possible to fix venue, in conformance with the constitution, at a place far distant from the defendant's jurisdiction." C. Wright, Federal Practice and Procedure, Ch. 6, § 301 p. 295 (2000). Professor Wright then goes on to note that, "The Supreme Court has not been consistent in the view it has taken of the difficulties thus caused." Id.
In an effort to determine the locus delicti many courts have rejected a mechanical approach and have looked to such factors as the site of the defendant's acts, the elements and the nature of the crime, the locality of the effect of the criminal conduct, and the suitability of each district for accurate fact finding. See United States v. Crawford, 115 F.3d 1397, 1403-1407 (8th Cir.), cert, denied, 522 U.S. 934, 118 S.Ct. 341, 139 L.Ed.2d 264 (1997). See also United States v. Marchant, 774 F.2d 888 (8th Cir.1985).
The government contends that venue is proper in this district under 18 U.S.C. § 3237, because the offenses alleged in the indictment are continuing offenses that were committed both in the Southern District of Florida and in the Eastern District of Missouri and possibly in other districts through the generation of false documents in Florida and the filling out of the false claims for reimbursement with the false documents used as justification in this district.
18 U.S.C. § 3237(a), provides that:
Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. Any offense involving the use of the mails, transportation in interstate or foreign commerce... is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.
This section describes venue for socalled continuing offenses. "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy. Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each." Armour Packing Co. v. United States, 153 F. 1, 5-6 (8th Cir.1907), affirmed, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1908).
The second paragraph in the section was enacted in 1948 in response to the Supreme Court's decision in United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944), wherein the Court held that venue was proper for prosecution of violations of the Federal Dentures Act only in the district where goods were placed in the mail for delivery and not in the district where delivery occurred. See 18 U.S.C.A. § 3237, Notes to 1948 Revision. *831 ("The last paragraph of the revised section was added to meet the situation created by the decision of the Supreme Court in United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944). The revised section removes all doubt as to the venue of continuing offenses and makes unnecessary special venue provisions...")
The undersigned has found several cases involving false statements made to the government, and false tax returns filed with the government, which are analogous to the case now at bar. In United States v. Marchant, supra, a grand jury indicted the defendant for willfully attempting to evade his income taxes for two tax years, and placed venue for those offenses in the Eastern District of Arkansas. During the tax years in question, Marchant and his wife resided in the Western District of Arkansas, and held several business interests in entities in Arkansas, Missouri, and Oklahoma. He was indicted for attempting to evade a large portion of his 1977 and 1978 income taxes by preparing and causing to be prepared, and mailing and causing to be mailed in the Eastern District of Arkansas, false and fraudulent tax returns. The defendant moved to dismiss for improper venue since he engaged in no conduct relating to the filing of his returns in the Eastern District of Arkansas, and, in fact, Marchant stated and the government agreed that the defendant was not even in the Eastern District of Arkansas during the relevant time periods. The facts did, however, show that the defendant's accountant was in the Eastern District of Arkansas, and that the returns were prepared and filled out in the Eastern District of Arkansas. In holding that venue was proper in the Eastern District of Arkansas before being filed in the Western District, even though the defendant may have never physically been in that district, the court stated as follows:
The Constitution and the federal laws of the United States grant persons the right to be tried in the judicial district in which their offense occurred. Questions of venue are not merely matters of formal legal procedure, but raise deep issues of public policy. United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236. The government must prove venue in criminal cases by a preponderance of the evidence.
In many instances all aspects of an offense are not committed within a single district. For these `continuing offenses' 18 U.S.C. § 3237(a) provides that `any offense against the United States begun in one district and completed in another or committed in more than one district may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. Under this statute, the locality of a crime for the purpose of venue extends over the whole area through which force propelled by an offender operates.' United States v. Johnson, supra.

The crime of willfully attempting to evade or defeat tax liability is completed when the taxpayer files the tax return with the Internal Revenue Service. Obviously the taxpayer can not file the return until it is prepared, signed, and mailed. These preliminary steps often occur in districts other than that in which the taxpayer files the return. In such cases, courts recognize that the violation of § 7201 is a `continuing offense' and the government can prosecute the taxpayer in the district where the return was prepared, signed, mailed, or filed... Here Marchant signed and mailed his returns in the Western District of Arkansas. Only his accountant's preparation of the returns occurred in the Eastern District. However, Marchant *832 permitted his accountant to carry false information into the Eastern District and there to prepare and attest returns understating Marchant's tax liability. Marchant therefore, propelled a force into the Eastern District as surely as had he personally prepared the returns in that district. Although Marchant's violation of § 7201 was completed in another district, it was at least set in play within the Eastern District. Consequently, it was a continuing offense and venue was proper in the Eastern District.
See United States v. Marchant, 774 F.2d 888, 891-892 (8th Cir.1985).
In addition, in United States v. Redfearn, 906 F.2d 352 (8th Cir.1990), the defendant was convicted of obtaining a student loan by using a false statement in her student loan application. The student loan application was filled out in North Dakota by Redfearn with false statements made on the application but sent by Norwest Bank to which she applied to the Educational Assistance Corporation, a guarantee agency selected by the University of North Dakota, and the federal government in South Dakota for approval. The funds could not be paid until they were submitted to the South Dakota organization. Redfearn received the funds from Norwest Bank in North Dakota. She alleged that the venue was improper because the crimes were committed in North Dakota and she was indicted and convicted in South Dakota. In upholding the venue as proper in South Dakota even though the defendant had never gone to South Dakota, the court stated as follows:
In United States v. Marchant, 774 F.2d 888, this court held that a crime of willfully attempting to evade or defeat tax liability was a continuing offense and under 18 U.S.C. § 3237(a), the government could prosecute the taxpayer in the district where the return was prepared, signed, mailed, or filed. This case is analogous. The case was begun in North Dakota when the application was filled out, continued in South Dakota when the loan was approved by EAC, and completed in North Dakota when the funds were received. Therefore, we find venue in South Dakota was proper under 18 U.S.C. § 3237(a).
906 F.2d 352, 353, 354.
In addition, as is recognized in the Eighth Circuit, venue must be determined from the nature of the crime alleged, and the location and the act or acts constituting it. See United States v. Washington, 109 F.3d 459 (8th Cir.1997). In United States v. Washington, the defendant was charged with a scheme to defraud several banks in violation of 18 U.S.C. § 1344. The court recognized that the statute was in the nature of the mail fraud statute, and, like the statute involved in this case 18 U.S.C. § 1347, involved a "scheme or artifice" to defraud. See Washington, supra at 466. In determining that venue was proper in the Western District of Arkansas, the court determined that acts necessary to the scheme to defraud were committed in the Western District of Arkansas even though other districts, including the Eastern District of Arkansas, were heavily implicated in the fraud scheme. In upholding the venue, the court stated as follows:
As the words suggest, a `scheme to defraud' is at least in most cases a series of acts designed to obtain money or property fraudulently not simply one specific act using the mails (mail fraud) or cashing a bogus check (bank fraud). Thus, for purposes of 3237(a) it is nearly as broad as criminal conspiracy for which venue is proper in any district in *833 which any conduct comprising the conspiracy occurred.
Washington, supra at 466.
The court went on to find that acts necessary to the scheme to defraud such as another person opening a fictitious bank account and signing a bank signature card at the behest of the defendant was sufficient to provide venue in that district. In so holding, the court recognized that "an offense begun in one district and completed in another or completed in more than one district may be prosecuted in any district in which it was begun, continued, or completed." Washington, supra at 466. See also Prosper v. United States, 218 F.3d 883 (8th Cir.2000) (money laundering conspiracy may be prosecuted in any district where overt acts in furtherance of mail and health care fraud were committed and funds were received which were then laundered).
In the case of United States v. Angotti 105 F.3d 539 (9th Cir.1997), the defendant was charged in the Central District of California with making false statements and documents submitted to obtain a loan from a federally insured lending institution in violation of 18 U.S.C. § 1014. The defendant submitted the documents containing the false statements to a mortgage company in the Northern District of California. The mortgage company then prepared a loan package which contained the false information provided to it by the defendant, and forwarded it to a branch office of the lending institution which was also located in the Northern District of California. The branch office then forwarded the loan package to the institution's main office which was located in the Central District of California. The loan was ultimately approved at the main office. The defendant argued that venue was not proper in the Central District of California because all the false statements made by him were made in the Northern District of California. The court held that although the crime committed by the defendant might have been complete when the documents were submitted to the lending institution office in the Northern District of California, the offense continued until it reached the person it was intended ultimately to influence, namely the institution's main office in the Central District of California. The court held that this was so even if the defendant had no knowledge that the loan package would ultimately be forwarded to the office in the Central Distinct of California. The court held that venue was therefore proper in the Central District of California. United States v. Angotti, 105 F.3d 539 at 542-544.[1]
*834 While perhaps none of the above cases may be directly on point with the facts in the instant case (although many are very close) they do demonstrate that courts have interpreted 18 U.S.C. § 3237(a) broadly in determining whether venue is proper in a particular prosecution.
Given the above law and facts, the undersigned concludes that venue is proper in this district. The indictment as to allegations which are included in all of the counts alleges that Goodwill Medical is a medicare provider, and goes on to state "a Medicare provider must submit a claim for payment to the carrier by either mailing a 'Request for Medical Payment Form' or transmitting the claim electronically through the medical claims entry system." Further, the indictment alleges that Goodwill "must furnish and certify the accuracy of the information on the medicare claim form including the identity of the patient, the provider number, the service provided, and the medical necessity for the services rendered." In specifically alleging how the scheme to defraud was executed and attempted to be executed both as to violations of 18 U.S.C. § 1347 and 18 U.S.C. § 1035, the indictment alleges that Lopez and Goodwill "submitted or caused to be submitted to the Medicare carrier and to Florida Medicaid, claim forms seeking reimbursement for durable medical equipment which claim forms contained false and fraudulent statements and representations of material facts that the defendants knew to be false at the time they submitted or caused the claims to be submitted." In addition, in paragraph 25, it is alleged that it was a part of the scheme and artifice to defraud that Lopez contracted with MedNet in St. Louis to process and submit reimbursement claims for Goodwill Medical, and that Lopez and Goodwill in Florida submitted to MedNet in Missouri by facsimile information for each claim to be submitted to Medicare including all the claims listed in all of the counts. The indictment then alleges "MedNet then electronically transmitted the claims to Palmetto in Columbia, South Carolina." It should be noted that Palmetto is the Medicare representative for the payment of Medicare claims contracted by Medicare.
Thus, the undersigned finds that the government has alleged and says it will prove at trial, according to the testimony at the hearing on this matter, that the documents which were submitted to Medicare and contained false information and false certifications and were the documents upon which the claims were to be paid, were prepared by MedNet in St. Louis, Missouri, at the direction of Goodwill Medical from Florida. Further, according to the documents submitted at the motion hearing, the information upon which these false claims were based and prepared were sent from Goodwill in Florida electronically to MedNet in St. Louis so the claims containing the false information could be documented by MedNet. After MedNet obtained these documents, they prepared claim forms containing the fraudulent information provided to them, and, at the direction and with the signed written consent of Goodwill Medical, submitted these claims electronically to Medicare who then paid Goodwill for their "services." Thus, as in Marchant, supra, Lopez and Goodwill "propelled a force into the Eastern District of [Missouri] as surely as had [s]he personally prepared the returns in that district." Marchant supra at 891-892. As in Washington, supra, the defendant was charged with a general scheme to defraud in Count I and several counts if making false statements within the jurisdiction of the government in Counts II through XXIII. As in Washington, supra, venue was proper in any district in which a significant part of the scheme was perpetrated. In this case, both according to the *835 allegations in the indictment and the proof presented at the hearing, acts essential to the scheme were completed in the Eastern District of Missouri by MedNet. As in Redfearn, supra, and Marchant, supra, it is of no significance that the defendant may never have been physically in this district, because she caused MedNet in this district to prepare false claims forms and to send them on from this district to Medicare for payment to her. Therefore, venue in this district is proper.

B. Alternative Motion for Transfer
It does not necessarily follow from the mere fact that venue is proper in this district that the trial of the case must necessarily be held in this district. Rule 21(b), Federal Rules of Criminal Procedure provides that "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses, and in the interest of justice." Venue provisions are to be liberally construed so as to minimize inconvenience to the parties, especially the defendant. United States v. Cashin, 281 F.2d 669, 675 (2nd Cir.1960); United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944). The decision as to whether to transfer a case to another district pursuant to Rule 21 is a decision which belongs to the sound discretion of the district court, and should not be overturned in the absence of a clear abuse of that discretion. See United States v. Green, 983 F.2d 100 (8th Cir. 1992).
In Platt v. Minnesota Mining Co., 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), the Supreme Court noted with approval a number of factors considered by the district court in granting a motion for change of venue including: 1) location of the defendant; 2) location of the witnesses; 3) location of events in issue; 4) location of documents and records likely to be used in trial; 5) disruption of the defendant's business; 6) expense to the parties; 7) location of counsel; 8) accessibility of place of trial; 9) docket condition of the respective districts, and 10) any other considerations which might effect transfer, supra, at 243-244, 84 S.Ct. 769. Many courts have used these factors as a guide in considering a motion for change of venue under Rule 21(b), including the Eighth Circuit Court of Appeals. See United States v. McGregor, 503 F.2d 1167, 1170. Each of these factors will be discussed in turn.
1) Location of the defendant: The defendant resides in the Southern District of Florida and has a small child in that district. Further, the defendant's husband is a police officer in the Southern District of Florida. Although a defendant is not entitled by right to a trial in the district of his or her residence, her place of residence is a factor to be given consideration although not necessarily controlling consideration in determining the motion for transfer under Rule 21. See Platt, supra, 376 U.S. at 245-246, 84 S.Ct. 769. This factor, as is recognized by the government, favors transfer of the case.
2) Location of witnesses: The parties vary widely on who they believe will be called as witnesses and the length of trial. The defendant states that the government must call more than thirty witnesses from the Southern District of Florida, and that the only witnesses not from the Southern District of Florida will be the witnesses from MedNet. They claim that the vast majority of the scheme was perpetrated in Florida, and that all the doctors and patients involved in the scheme were in Florida, and the documents were originally generated in Florida. They say that the trial may be lengthy. Although the government does not contest that a large part *836 of the scheme was committed in Florida, and that the documents were prepared in Florida, and that the doctors and patients, some of whom were involved in the scheme, are in Florida, it states that the witnesses will be mainly from other areas with the majority of the witnesses being from St. Louis. Specifically, the government states that it will try the case calling the FBI agent who is the chief investigator in the case who is from the St. Louis area; two representatives from MedNet who reside in the St. Louis area; one expert witness in durable medical equipment who will be from the St. Louis area; one medical doctor from Miami, Florida, as a rebuttal witness and one representative of Medicare from Columbia, South Carolina. The government states that only two government witnesses will have to travel to St. Louis, the Palmetto representative from South Carolina and a medical doctor from Florida. The government says the trial will last three days. It states that this will cost approximately $800. On the other hand, it states that if the case is transferred to Florida the cost will be greater. This issue is difficult to balance given the divergent claims of the parties, therefore, the undersigned concludes that this issue neither favors nor disfavors transfer.
3) Location of the events likely to be at issue: Neither party has directly addressed this issue other than stating that most of the false documents and patients who were involved in the scheme were procured in Florida and the false prescriptions and certifications initially were generated in Florida and then submitted to St. Louis. On the other hand, the claim forms themselves were generated and put together in St. Louis, and those false documents were faxed or sent from Florida to St. Louis and then on to Medicare in South Carolina. Therefore, it is likely that both events occurring in Florida and St. Louis may well be likely at issue. Because of this, the undersigned concludes that this factor is neutral.
4) Location of the documents and records: The government contends that all of the documents necessary to be introduced into trial are located in the Eastern District of Missouri. While this may be true, the undersigned also considers that many of the documents probably were originally generated in Florida and sent to St. Louis either pursuant to subpoenas or by Goodwill Medical when presenting them to MedNet for processing and filling out the claim forms and justifying the payments. Therefore, even though the documents now exist in this district because they were at least to some extent originally created in the Southern District of Florida, the undersigned concludes that this factor neither favors nor disfavors transfer.
5) Disruption of business: The defendant has not stated that the defendant is currently working or that trial in this district would disrupt the defendant's ability to work if the case were tried in this district rather than the Southern District of Florida. On the other hand, the government states that transfer would substantially disrupt MedNet's business which is a small company whose principals would have to travel to Florida for extensive testimony. Therefore, this factor favors not transferring this case.
6) Expense to the parties: If the case were tried in the Eastern District of Missouri, the defendant would be required to incur expenses for travel, accommodations, meals, and other incidental expenses for her and her counsel, the principal attorney being from the Southern District of Florida. She also would be required to bear such expenses for her witnesses, some of whom may be from Florida. If the case were tried in the Southern District of Florida, *837 the government would be required to transport at least four of its witnesses and one Assistant United States Attorney to the Southern District of Florida. It would avoid having to pay at least one and maybe more witnesses from the Southern District of Florida. On balance, this factor favors neither party.
7) Location of counsel: The defendant is represented by an attorney whose office and practice are in the Southern District of Florida, and who is appearing pro hac vice in this cause, and has been required to retain local counsel. The government is represented in this prosecution by an Assistant United States Attorney who is from the Eastern District of Missouri. If the trial of this case is in the Eastern District of Missouri, the defendant's counsel would likely have to rely on support services from local counsel which would be an added expense to the defendant. If the case were tried in the Southern District of Florida, government counsel would be required to be authorized and designated as Special Assistant United States Attorney for that district which could likely be accomplished with relative ease. The government attorneys would likely have available to them support services from and in the offices of the United States Attorney for the Southern District of Florida. Given the above, this factor very slightly favors transfer.
8) Accessibility of the place of trial: Both St. Louis, Missouri and Miami, Florida are major metropolitan areas that are well-served by commercial air and other transportation, and therefore this factor neither favors nor disfavors transfer.
9) Docket condition: Because of the provisions of the Speedy Trial Act, 18 U.S.C. § 3161, et seq, this factor is of little import in determining whether to transfer this case. See United States v. Haley, 504 F.Supp. 1124 (E.D.Pa.)
10) Special considerations: None have been brought to the undersigned's attention.
Given the above, the undersigned concludes that the issue of whether or not the case should be transferred for the convenience of the parties is a very close one. In this regard, the case of United States v. Bittner, 782 F.2d 1038 (8th Cir.1984), provides some guidance as to whether or not the case should be transferred. In Bittner, the defendant claimed that the case should be tried in the Northern District of Illinois rather than the Southern District of Iowa because:
He argues that the Northern District of Illinois was the logical situs for the trial because both he and Brown reside in that area and his lawyer maintains an office and regularly practices there. Most of the events surrounding the alleged kidnapping took place there, and the witnesses residing in Iowa added little to the government's case. Moreover, Bittner contends that the court's denial of his motion to transfer irreparably harmed him. He claims to be a man of modest means, and he could not afford to transport psychological experts and character witnesses from Chicago to testify on his behalf. In addition, Bittner argues that a jury consisting of residents of the Chicago area would be familiar with the area in which the kidnapping took place and would, therefore, doubt Brown's claim that she was unable to escape from Bittner.
United States v. Bittner, 728 F.2d 1038, 1041.
In refusing to grant the transfer, the
court stated as follows:
A reviewing court may not upset a trial court's ruling on change of venue motion absent a showing that the trial court abused its discretion. The evidence does not indicate that the district court *838 abused its discretion in denying Bittner's motion and proceeding with the trial in Iowa. The alleged sexual acts which were an integral part of the kidnapping occurred in Iowa, Bittner was arrested and was in custody in Iowa, the majority of the witnesses resided in Iowa, Bittner was able to retain local counsel in Iowa, and the court docket in the Southern District of Iowa was lighter than the docket in the Northern District of Illinois. Although Bittner's residence in Chicago is one factor that weighs in favor of transferring the case to Illinois, it does not in itself entitle him to be tried in Illinois.
See Bittner, supra at 1041, 1042.
Given the above law, the undersigned concludes that the motion for transfer should be denied. This conclusion is based on the assumption that the government's statement as to what witnesses it will use at trial is correct. If the government adheres to its written statement to the undersigned as to its witnesses, the trial will be short and a majority of the witnesses will be from this district. The undersigned also concludes that according to the indictment and the documents presented at the hearing on the motion to transfer, the MedNet witnesses had significant contact with the defendant relating to the information to be placed on the claim forms which proved to be fraudulent and which MedNet prepared and sent on to Medicare. Therefore, the undersigned concludes that the MedNet witnesses would likely provide significant evidence that is at the heart of the alleged scheme. Given the above, the undersigned concludes that although this issue is a very close one, the Rule 21(b) transfer should be denied.

Conclusion
Therefore, for the above reasons, the defendant's motion should be denied.

* * * * * *
In accordance with the Memorandum above,
IT IS HEREBY RECOMMENDED that (Doc. # 17) Motion of Defendant Isabel Lopez to Dismiss Indictment for Improper Venue or, in the Alternative, to Transfer this Case to the U.S. District Court, Southern District of Florida be denied.
The parties are advised that they have eleven (11) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir.1990).
Aug. 30, 2004.
NOTES
[1] The defendant relies on the case of United States v. Herberman, 583 F.2d 222 (5th Cir. 1978). In Herberman, the defendant claimed that venue was proper only in the district where the Medicare forms were ultimately presented for payment rather than the district where the forms were filled out, executed, or mailed. In upholding venue in the district where the forms were filled out and mailed, the court stated as follows:

We follow this court's holding in De Rosier v. United States, 218 F.2d 420 (5th Cir. 1955), and conclude that when the forms containing the alleged false statements were prepared and forwarded to HEW in Dallas, there was set in motion the events which allegedly culminated in the commission of the offenses charged. Therefore, we find the district court was correct in holding venue was proper in the Western District of Texas.
583 F.2d 222, 227, 228.
Based on a reading of the above case, the undersigned concludes that it does not preclude a prosecution of the defendants in this district. As in Herberman, supra, in the case now at bar, the forms containing the false statements were prepared in this district and forwarded on to Medicare at the direction of Goodwill and the defendant. Therefore, even under Herberman, venue was proper in this district.